Filed 5/18/16  P. v Moore CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>THOMAS MOORE,<br><br>Defendant and Appellant. | F070205<br><br>(Super. Ct. No. CRM026364)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Merced County.  Marc A. Garcia, Judge.

Shannon Chase, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Kathleen A. McKenna and William K. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

On April 10, 2013, defendant Thomas Moore pled no contest to one felony count of possession or control of child pornography in violation of Penal Code section 311.11,

subdivision (a).[1]  The trial court suspended imposition of sentence and placed defendant on probation for three years, subject to various terms and conditions, including no contact with children.[2]  In August 2014, the probation department sought a modification of defendant's probation to add new conditions.  After holding probation modification hearings on August 22, 2014, and September 16, 2014, the trial court, in relevant part, imposed compliance with section 1203.067, subdivision (b)(3), but stayed enforcement pending an appeal of its constitutionality.

On September 16, 2014, defendant filed a notice of appeal challenging two of his probation conditions as facially unconstitutional.  (§ 1237, subd. (a).)  Defendant argues section 1203.067, subdivision (b)(3), and the related mandatory polygraph consent form violate the Fifth Amendment's Self-Incrimination Clause, and the no contact condition is unconstitutionally vague.

For the reasons discussed below, we find the provisions in section 1203.067, subdivision (b)(3), and the polygraph consent form waiving the privilege against self-incrimination are unconstitutional under the Fifth Amendment, and defendant's challenge to the no contact condition is untimely.

## DISCUSSION

### I.      Constitutionality of Required Waiver of Privilege Against Self-Incrimination

#### A.      Background

Courts have long recognized that "[p]robation is 'an act of clemency and grace' [citation], not a matter of right."  (*People v. Anderson* (2010) 50 Cal.4th 19, 32.)  A primary goal underlying conditions of probation is ensuring public safety (§ 1202.7), and as a class, sex offenders are recognized as dangerous and at high risk of recidivism. (*People v. Mosley* (2015) 60 Cal.4th 1044, 1068; see generally *Smith v. Doe* (2003) 538

---

[1]      All other references are to the Penal Code unless otherwise noted.

[2]      Referred to hereinafter as no contact condition.

2.

U.S. 84, 103.)  Effective September 9, 2010, Assembly Bill No. 1844, the Chelsea King Child Predator Prevention Act of 2010, was passed.  In relevant part, the bill added probation conditions that were similar to parole restrictions and required participation in a sex offender management program as part of "a 'Containment Approach' or 'Containment Model' program for sex offenders," with a program goal of reducing recidivism.  (Sen. Appropriations Com., Analysis of Assem. Bill 1844 (2009-2010 Reg. Sess.) Aug. 12, 2010, p. 5.)  As part of this program, the bill amended section 1203.067 to add subdivision (b)(3), which requires "[w]aiver of any privilege against self-incrimination and participation in polygraph examinations, which shall be part of the sex offender management program."  (§ 1203.067, subd. (b)(3).)

Defendant's conviction for possession or control of child pornography subjects him to mandatory registration under section 290, subdivisions (b) and (c), the Sex Offender Registration Act, and in turn, section 1203.067, subdivision (b), applies to section 290 registrants such as defendant.

In addition to the statutory waiver of the privilege against self-incrimination, the polygraph consent form provided to defendant for his signature includes the following statement:  "I am consenting to this examination without threats, force, duress, reward, or any promise of immunity."  On appeal, defendant contends the State may not require him to waive his Fifth Amendment right against self-incrimination as a condition of probation and the statutory waiver provision is therefore facially unconstitutional.[3]  He challenges the polygraph consent form on the same ground.

In respondent's view, we should apply the canon of constitutional avoidance and adopt a reasonable construction of the statute that avoids the constitutional issue; the

---

[3]     This issue is currently pending review by the California Supreme Court.  (E.g., *People v. Klatt* (2014) 225 Cal.App.4th 906, review granted July 16, 2014, S218755; *People v. Friday* (2014) 225 Cal.App.4th 8, review granted July 16, 2014, S218288; *People v. Garcia* (2014) 224 Cal.App.4th 1283, review granted July 16, 2014, S218197.)

probation condition does not and will not violate the Fifth Amendment because merely compelling incriminating statements does not violate the core right; no prophylactic remedy is necessary because defendant is already protected under the law from any use or derivative use of any compelled statements; and we can declare a rule of use and derivative use immunity protecting any disclosures made by defendant.[4]

## B.      Privilege Against Self-Incrimination and Penalty Case Exception

The Fifth Amendment provides, in relevant part, that no person "shall be compelled in any criminal case to be a witness against himself .…" (U.S. Const., 5th Amend.)  "The object of the Amendment 'was to insure that a person should not be compelled, when acting as a witness in any investigation, to give testimony which might tend to show that he himself had committed a crime.' [Citations.]" (*Lefkowitz v. Turley* (1973) 414 U.S. 70, 77.)  The United States Supreme Court has recognized the privilege against self-incrimination "reflects a complex of our fundamental values and aspirations, and marks an important advance in the development of our liberty.  It can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory; and it protects against any disclosures that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used.  [The]

---

[4]      We reject respondent's argument regarding application of the canon of constitutional avoidance at the outset. (See *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 509 ["'If a statute is susceptible of two constructions, one of which will render it constitutional and the other unconstitutional in whole or in part, or raise serious and doubtful constitutional questions, the court will adopt the construction which, without doing violence to the reasonable meaning of the language used, will render it valid in its entirety, or free from doubt as to its constitutionality, even though the other construction is equally reasonable. [Citations.]'"].) As recognized in *Reidy v. City and County of San Francisco* (2004) 123 Cal.App.4th 580, 591, cited by respondent, "[t]he primary rule of statutory construction is to ascertain the legislative intent in order to effectuate the statute's purpose. [Citation.]  When the words of the statute are clear, the court does not alter or amend them to accomplish a purpose that does not appear on the face of the statute; rather, the court gives effect to the plain meaning of the statute." Here, the statutory language is clear and not susceptible to more than one interpretation.

Court has been zealous to safeguard the values that underlie the privilege." (*Kastigar v. United States* (1972) 406 U.S. 441, 444-445.) Thus, "a witness protected by the privilege may rightfully refuse to answer unless and until he is protected at least against the use of his compelled answers and evidence derived therefrom in any subsequent criminal case in which he is a defendant. [Citation.] Absent such protection, if he is nevertheless compelled to answer, his answers are inadmissible against him in a later criminal prosecution." (*Lefkowitz v. Turley*, *supra*, 414 U.S. at p. 77.)

Generally, the privilege against self-incrimination is not self-executing, and persons seeking to shield themselves must claim or invoke the privilege. (*Minnesota v. Murphy* (1984) 465 U.S. 420, 429 (*Murphy*).) The decision to answer rather than claim the privilege is considered voluntary. (*Ibid.*) Conversely, if statements are compelled despite invocation of the privilege and in the absence of protection, those statements may not be used in a future criminal proceeding. (*Id.* at p. 426.)

A long-recognized exception to the general rule that the privilege is not self-executing and must be claimed exists "in cases where the assertion of the privilege is penalized so as to '[foreclose] a free choice to remain silent, and … [compel] … incriminating testimony.' [Citation.]" (*Murphy*, *supra*, 465 U.S. at p. 434.) "In most of [such] cases, the attempt to override the witnesses' privilege proved unsuccessful, and the Court ruled that the State could not constitutionally make good on its prior threat. [Citations.] These cases make clear that 'a State may not impose substantial penalties because a witness elects to exercise his Fifth Amendment right not to give incriminating testimony against himself.' [Citation.]" (*Ibid.*) "The threat of punishment for reliance on the privilege distinguishes cases of this sort from the ordinary case in which a witness is merely required to appear and give testimony." (*Id.* at p. 435.) Probationers retain their Fifth Amendment right against self-incrimination, and in *Murphy*, the United States Supreme Court noted "a substantial basis in our cases for concluding that if the State, either expressly or by implication, asserts that invocation of the privilege would lead to

5.

revocation of probation, it would have created the classic penalty situation, the failure to assert the privilege would be excused, and the probationer's answers would be deemed compelled and inadmissible in a criminal prosecution." (*Murphy*, *supra*, 465 U.S. at pp. 426, 435.)

### C. Statutory Waiver Provision

Respondent concedes that the statutory waiver of any privilege against self-incrimination creates a classic penalty situation and we accept that concession as well founded under the law. (*Murphy*, *supra*, 465 U.S. at pp. 426, 435.) However, we find respondent's argument that the waiver provision nonetheless withstands constitutional scrutiny because any incriminating statements compelled cannot be used against defendant in subsequent criminal proceedings less supportable.

In 1984, the United States Supreme Court decided *Murphy* in which a probationer made self-incriminating statements to his probation officer and then challenged use of the statements on Fifth Amendment grounds when he was indicted for first degree murder. (*Murphy*, *supra*, 465 U.S. at pp. 423-425.) The court rejected the challenge, holding that the statements he made were voluntary and not compelled, as he neither claimed the privilege against self-incrimination nor "was deterred from claiming the privilege by a reasonably perceived threat of revocation." (*Id.* at pp. 439-440.)

Since the decision in *Murphy*, the United States Supreme Court and the California Supreme Court have discussed the Fifth Amendment right against self-incrimination, and recognized a distinction between the core right against self-incrimination in a criminal trial and the prophylactic and exclusionary rules designed to protect that core right. (*Chavez v. Martinez* (2003) 538 U.S. 760 (*Chavez*); *Maldonado v. Superior Court* (2012) 53 Cal.4th 1112 (*Maldonado*); *Spielbauer v. County of Santa Clara* (2009) 45 Cal.4th 704 (*Spielbauer*).) It is the narrow core right view discussed in those cases that underpins respondent's argument.

However, those cases did not involve a challenge by a probationer to a statutory waiver of the privilege as condition of probation as here or a challenge to the subsequent use of statements made to a probation officer as in *Murphy*, and we do not find their discussion of the core right view controlling here. While it may be that incriminating statements successfully compelled in circumstances such as this will be found subject to exclusion in any subsequent criminal trial, sole reliance on an exclusionary rule as sufficiently protective of the core Fifth Amendment right against self-incrimination overlooks collective jurisprudence to the contrary.[5] (E.g., *Murphy*, *supra*, 465 U.S. at pp. 434-435; *Lefkowitz v. Turley*, *supra*, 414 U.S. at pp. 77-85; *Spielbauer*, *supra*, 45 Cal.4th at pp. 725-727.) That collective jurisprudence prohibits the government from coercing a waiver of the privilege over threat of punishment in the first instance.

Citing *Spielbauer* and *Pennsylvania v. Muniz* (1990) 496 U.S. 582, 589, we have recognized that "[t]he constitutional guarantee against compelled self-incrimination does more than protect an individual from being forced to testify against him- or herself in a pending criminal proceeding; '[i]t also privileges a person not to answer official questions in any other proceeding, "civil or criminal, formal or informal," where he or she reasonably believes the answers might incriminate him or her in a criminal case.' [Citation.] Thus, the privilege protects a person both from being compelled to testify against him- or herself and from being required to provide the state with evidence of a testimonial or communicative nature." (*Kassey S. v. City of Turlock* (2013) 212 Cal.App.4th 1276, 1280-1281.) These principles are well-established and *Chavez*,

---

[5] In dicta, the California Supreme Court signaled disapproval with similar reasoning in *Spielbauer* but as discussed post, *Spielbauer* is distinguishable and the decision did not speak to a penalty case exception such as presented here. (*Spielbauer*, *supra*, 45 Cal.4th at p. 727; see *People v. Jennings* (2010) 50 Cal.4th 616, 684 ["'It is axiomatic that cases are not authority for propositions not considered.' [Citation.] 'The holding of a decision is limited by the facts of the case being decided, notwithstanding the use of overly broad language by the court in stating the issue before it or its holding or in its reasoning.' [Citation.]"].)

*Maldonado*, and *Spielbauer* presented no departure from them. (*Chavez, supra*, 538 U.S. at pp. 767-771; *Maldonado, supra*, 53 Cal.4th at pp. 1127-1129; *Spielbauer, supra*, 45 Cal.4th at pp. 714-715.)

In *Chavez*, the United States Supreme Court addressed, in relevant part, the issue of qualified immunity in a civil rights suit brought pursuant to 42 U.S.C. § 1983. The plaintiff alleged that his Fifth Amendment right against self-incrimination was violated when a police officer questioned him about a police shooting while he was at the hospital receiving medical treatment for the serious injuries sustained in the shooting. (*Chavez, supra*, 538 U.S. at pp. 764-765.) While the plaintiff was not given a *Miranda* (*Miranda v. Arizona* (1966) 384 U.S. 436) warning, he was also never charged with any crime and therefore, his answers were not used against him in criminal proceedings. (*Chavez*, at p. 764.) Notably, *Chavez* did not present the occasion to decide a penalty case exception such as at issue here and it was a fragmented, plurality decision that commanded no majority.[6]

Justice Thomas delivered the plurality opinion, which held that the plaintiff's Fifth Amendment right against self-incrimination was not violated by the officer's allegedly coercive questioning. (*Chavez, supra*, 538 U.S. at p. 773 (plur. opn. of Thomas, J.).) Justice Thomas explained that "a violation of the constitutional *right* against self-incrimination occurs only if one has been compelled to be a witness against himself in a criminal case." (*Id.* at pp. 770, 776.) He reasoned that "[r]ules designed to safeguard a constitutional right … do not extend the scope of the constitutional right itself, just as violations of judicially crafted prophylactic rules do not violate the constitutional rights of any person," and he rejected the "view that mere compulsion violates the Self-

---

[6]    "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds….' [Citation.]" (*Marks v. United States* (1977) 430 U.S. 188, 193.)

8.

Incrimination Clause." (*Id.* at pp. 772-773.) To the contrary, no "core Fifth Amendment claim" exists in "the absence of a 'criminal case' in which [one is] compelled to be a 'witness' against himself." (*Ibid.*)

However, this reasoning was set forth in a case arising from facts very different from those here. Indeed, Justice Thomas explicitly recognized the penalty case exception line of cases, describing that principle as "well established." (*Chavez*, *supra*, 538 U.S. at pp. 767-768.) Further, the opinion acknowledged that a signed immunity waiver precludes the signatory from objecting on Fifth Amendment grounds to the subsequent use of the statements in a criminal case, even if the statements were compelled, and "[a] waiver of immunity is therefore a prospective waiver of the core self-incrimination right in any subsequent criminal proceeding …." (*Chavez,* at p. 768, fn. 2.)

*Chavez* recognized the creation of "prophylactic rules designed to safeguard the core constitutional right protected by the Self-Incrimination Clause" (*Chavez*, *supra*, 538 U.S. at p. 770), and "[t]he natural concern which underlies many of these decisions is that an inability to protect the right at one stage of a proceeding may make its invocation useless at a later stage." (*Michigan v. Tucker* (1974) 417 U.S. 433, 440; *United States v. Patane* (2004) 542 U.S. 630, 638; *Chavez*, *supra*, 538 U.S. at pp. 770-771.) The case was concerned with, and rejected, what would have been an expansion of the core Fifth Amendment right against self-incrimination to allow someone never subjected to criminal proceedings to assert a completed constitutional violation of the Fifth Amendment by a mere infringement of a prophylactic rule. (*Chavez*, *supra*, 538 U.S. at pp. 770-772.) In contrast, this case concerns not an expansion of the core right or the prophylactic rule, but statutory impingement on a constitutional privilege recognized as necessary to safeguard the core right against self-incrimination. (*Ibid.*)

The California Supreme Court subsequently discussed *Chavez* favorably in *Spielbauer* and *Maldonado*. Those cases, too, were concerned with unnecessary expansions of prophylactic rules. In *Spielbauer*, a former county employee challenged

9.

his employment termination via a writ of mandamus. (*Spielbauer*, *supra*, 45 Cal.4th at p. 713.) His employer, the public defender's office, sought to question him about a deceptive representation he made in court regarding a witness's availability. (*Id.* at pp. 710-713.) He was expressly informed by his supervisor that any statements he made would *not* be used against him in a criminal proceeding. (*Id.* at p. 712.) He refused to answer in the absence of a *formal* immunity agreement and he was terminated in part for insubordination relating to the refusal to answer questions. (*Id.* at pp. 712-713.)

In rejecting the employee's claim, the court was "persuaded that neither the federal nor the California constitutional privilege against compelled self-incrimination requires a public employer to provide its employee with a formal grant of criminal use immunity before it can require the employee, upon threat of job discipline, to answer questions relating to the employee's job performance. On the contrary, the employer may discipline, and even dismiss, a public employee for refusing, on grounds of the constitutional privilege, to answer the employer's job-related questions, so long as the employee is not required, as a condition of remaining in the job, to *surrender* his or her right against criminal use of the statements thus obtained—at least where, as here, the employee is specifically advised that he or she retains that right." (*Spielbauer*, *supra*, 45 Cal.4th at p. 725.)

Thus, *Spielbauer* did not involve a penalty case situation, and the court was unpersuaded that a formal immunity agreement was constitutionally required to adequately protect the core Fifth Amendment right against self-incrimination. (*Spielbauer*, *supra*, 45 Cal.4th at p. 729.) Rather, the existing rule prohibiting use and derivative use of any self-incriminating statements compelled was sufficiently protective of the right against self-incrimination where, as there, the employee was not required to waive the privilege and was instead explicitly assured his statements could not be used against him in a criminal case. (*Id.* at pp. 714-715, 729.)

More recently, the California Supreme Court considered what measures, if any, were necessary to protect a defendant's Fifth and Sixth Amendment rights in the context of a mental examination by the prosecution experts where the defendant provided notice of his intent to place his mental state at issue during trial pursuant to section 1054.3, subdivision (b)(1).**7** (*Maldonado*, *supra*, 53 Cal.4th at pp. 1124-1125.) In *Maldonado*, there was no dispute that the defendant's statements were protected from direct or derivative use by the Fifth Amendment but he sought *additional* prophylactic measures. (*Maldonado,* at pp. 1129-1130.) The court held that "neither the Fifth Amendment right against self-incrimination, nor prophylactic concerns about the protection of that right, justify precluding the prosecution from full pretrial access to the results of mental examinations by prosecution experts conducted, pursuant to section 1054.3(b)(1), for the purpose of obtaining evidence to rebut a mental-state defense the defendant has indicated he or she intends to present on the issue of guilt" and the court of appeal "erred in ordering such restrictions ...." (*Id.* at p. 1141.)

In sum, the decisions in *Chavez*, *Spielbauer*, and *Maldonado* do not persuade us that because the penalty case exception will apply and preclude use of incriminating statements in criminal proceedings, it is constitutionally permissible for the State to require probationers to waive their privilege against self-incrimination as a condition of probation. Those decisions are readily distinguishable and as we have indicated, resolution of the issue in this case does not call upon us to expand either the core Fifth Amendment right against self-incrimination or existing prophylactic rules, which were

---

**7**    Section 1054.3, subdivision (b)(1), provides, "Unless otherwise specifically addressed by an existing provision of law, whenever a defendant in a criminal action or a minor in a juvenile proceeding brought pursuant to a petition alleging the juvenile to be within Section 602 of the Welfare and Institutions Code places in issue his or her mental state at any phase of the criminal action or juvenile proceeding through the proposed testimony of any mental health expert, upon timely request by the prosecution, the court may order that the defendant or juvenile submit to examination by a prosecution-retained mental health expert."

11.

concerns underlying those decisions.  Rather, the issue in this case is controlled by existing penalty case jurisprudence.[8]  (*Murphy*, *supra*, 465 U.S. at pp. 434-435; *Lefkowitz v. Turley*, *supra*, 414 U.S. at pp. 82-85.)

We recognize the state has a strong and legitimate interest in protecting public safety (*People v. Cruz* (2012) 207 Cal.App.4th 664, 679), and as discussed ante, the waiver provision, coupled with the mandatory polygraph examination, was enacted as part of a comprehensive program approach aimed at reducing the likelihood that sex offenders will abuse the privilege of probation and victimize members of the public by committing new crimes.  (Sen. Appropriations Com., Analysis of Assem. Bill 1844 (2009-2010 Reg. Sess.) Aug. 12, 2010, p. 5.)  However, both the United States Supreme Court and the California Supreme Court have long recognized that under the Fifth Amendment, "[o]ne cannot be forced to choose between forfeiting the privilege, on the one hand, or asserting it and suffering a penalty for doing so on the other."  (*Spielbauer*, *supra*, 45 Cal.4th at p. 714; accord *United States v. Patane*, *supra*, 542 U.S. at p. 638 (plur. opn. of Thomas, J.); *Chavez*, *supra*, 538 U.S. at pp. 768-769; *Murphy*, *supra*, 465 U.S. at pp. 434-435; *Lefkowitz v. Turley*, *supra*, 414 U.S. at pp. 77-85; *Maldonado*, *supra*, 53 Cal.4th at pp. 1128-1129; cf. *McKune v. Lile* (2002) 536 U.S. 24, 34-48 (plur. opn. of Kennedy, J.) [in a plurality opinion, the court found the consequences faced by inmate for failing to participate in the State's in-prison treatment program for sex offenders did not amount to an unconstitutional compulsion].)  We find the statutory

---

[8]  We note that because the probationer in *Murphy* did not claim the privilege against self-incrimination and he was neither implicitly nor explicitly threatened with the revocation of his probation if he invoked the privilege, the case did not directly consider and resolve the issue presented in this case.  We nevertheless believe the decision in *Murphy* foreshadows the outcome we reach in this case.

waiver provision contravenes that established principle and by doing so, it impermissibly impinges on the Fifth Amendment privilege against self-incrimination.[9]

### D. Polygraph Consent Form Waiver Provision

The polygraph consent form, which probationers are required to sign, also includes a waiver of the privilege against self-incrimination. The constitutionality of polygraph examination requirements as a condition of probation has been considered in earlier cases.[10]

In *People v. Miller, supra*, 208 Cal.App.3d 1311, 1313, the appellate court considered a probationer's challenge to the condition "he submit to a polygraph examination at the direction of his probation officer." With respect to the probationer's Fifth Amendment challenge, the court noted the privilege against self-incrimination must be claimed and merely requiring him to take the polygraph examination did not infringe on the constitutional privilege against self-incrimination. (*People v. Miller*, at p. 1315.)

---

[9] Given our determination regarding the facial unconstitutionality of the waiver provision, we decline respondent's invitation to judicially declare a rule of use and derivative use immunity protecting any disclosures made by defendant. The *Maldonado* and *People v. Arcega* decisions cited by respondent involved incriminating, or potentially incriminating, statements made during court-ordered mental competency examinations. (*Maldonado, supra*, 53 Cal.4th at p. 1129, fn. 10; *People v. Arcega* (1982) 32 Cal.3d 504, 518-523.) As explained by the California Supreme Court in *People v. Arcega*, "[t]here is a rule of immunity for all statements and fruits of a mental competency examination which prevents their use at the guilt trial." (*Id.* at p. 518.) "This rule is necessary to ensure that an accused is not convicted by use of his own statements made at a court-compelled examination. The rule also fosters honesty and lack of restraint on the accused's part at the examination and thus promotes accuracy in the psychiatric evaluation. Hence, the rule protects both an accused's privilege against self-incrimination and the public policy of not trying persons who are mentally incompetent." (*Id.* at p. 522.) It suffices to note we find the context in which that rule was recognized to be readily distinguishable from the waiver provision at issue in this case.

[10] The cases pre-dated the enactment of section 1203.067, subdivision (b)(3), and the condition was imposed by the trial courts at the request of the probation department. (*Brown v. Superior Court* (2002) 101 Cal.App.4th 313, 318-319; *People v. Miller* (1989) 208 Cal.App.3d 1311, 1315.)

The court explained that "[a]lthough defendant has a duty to answer the polygraph examiner's questions truthfully, unless he invokes the privilege, shows a realistic threat of self-incrimination and nevertheless is required to answer, no violation of his right against self-incrimination is suffered." (*Ibid.*)

In *Brown v. Superior Court*, *supra*, 101 Cal.App.4th 313, 319, a different appellate court held that polygraph testing as a condition of probation was not "per se invalid and illegal." Relying on the reasoning in *People v. Miller* and citing *Murphy* for support, the court rejected the probationer's Fifth Amendment challenge to the mandatory polygraph. (*Brown v. Superior Court*, at p. 320.)

Both *Brown* and *Miller* addressed polygraph examinations that were not accompanied by express or implied waivers of the privilege against self-incrimination and in neither case had the probationer invoked the privilege but nonetheless been compelled to provide incriminating information. (*Brown v. Superior Court*, *supra*, 101 Cal.App.4th at p. 320; *People v. Miller*, *supra*, 208 Cal.App.3d at p. 1315.) In contrast, this case involves mandatory polygraph examinations accompanied by an express statutory waiver of the privilege against self-incrimination and a polygraph consent form including an express waiver. Under the statute and the consent form, there are no means available to the defendant to assert his or her Fifth Amendment privilege against self-incrimination. We found the statutory waiver provision invalid, and the polygraph consent form waiver provision fails on the same ground.

## II. Untimely Appeal of No Contact Condition

Defendant also challenges the probation condition prohibiting him from having contact with children on the ground it is unconstitutionally vague as to the element of scienter, or knowledge, and the term "contact." At our request, the parties filed supplemental letter briefs addressing the timeliness of defendant's appeal of the no contact condition. (Gov. Code, § 68081.) In his supplemental brief, defendant argues his

14.

appeal of this condition is not foreclosed given our decision in *People v. Hackler* (1993) 13 Cal.App.4th 1049 (*Hackler*). We find this argument unpersuasive.

"[A] notice of appeal … must be filed within 60 days after the rendition of the judgment or the making of the order being appealed." (Cal. Rules of Court, rule 8.308(a).) "A timely notice of appeal, as a general matter, is 'essential to appellate jurisdiction.' [Citation.] It largely divests the superior court of jurisdiction and vests it in the Court of Appeal. [Citation.] An untimely notice of appeal is 'wholly ineffectual: The delay cannot be waived, it cannot be cured by nunc pro tunc order, and the appellate court has no power to give relief, but must dismiss the appeal on motion or on its own motion.' [Citation.] The purpose of the requirement of a timely notice of appeal is, self-evidently, to further the finality of judgments by causing the defendant to take an appeal expeditiously or not at all." (*People v. Mendez* (1999) 19 Cal.4th 1084, 1094; accord *In re Chavez* (2003) 30 Cal.4th 643, 650; *People v. Lyons* (2009) 178 Cal.App.4th 1355, 1360-1361; *People v. Ramirez* (2008) 159 Cal.App.4th 1412, 1420-1421.)

The no contact condition of probation was imposed on April 10, 2013. No appeal of the condition was taken until September 16, 2014. While defendant's notice of appeal was timely as to the probation modification effected on September 16, 2014, the no contact condition was not addressed during the modification hearing and it was unaffected by the trial court's modification order.

Defendant's argument that *Hackler* is controlling ignores the context in which we considered that probation challenge and subsequent authority. In *Hackler*, we considered a challenge to a probation condition where the defendant did not appeal the condition when it was imposed or when probation was revoked. (*Hackler*, *supra*, 13 Cal.App.4th at pp. 1052-1053.) Instead, he challenged the condition within 60 days of being sentenced to prison, following revocation of probation. (*Ibid.*) Unlike this case, which involves a facial challenge to a probation condition brought 16 months after it was imposed, the

15.

prior condition of probation in *Hackler* and the subsequent revocation of probation and sentencing were related or intertwined.[11] (*Ibid.*)

Factual and procedural dissimilarities notwithstanding, in considering the appeal in *Hackler*, we expressly stated, after a review of authority, that we would follow appellate courts' then-practice of reaching the merits given "the absence of clear authority to the contrary ...." (*Hackler*, *supra*, 13 Cal.App.4th at p. 1057.) In doing so, we noted that the cases we relied on did not involve claims of waiver and therefore did "not stand as direct authority on the waiver issue." (*Ibid.*) Since *Hackler* was decided in 1993, however, clear authority has emerged regarding timely notices of appeal. We therefore decline defendant's invitation to ignore those subsequent developments in the law, which include authority from the California Supreme Court and this court. (*In re Chavez*, *supra*, 30 Cal.4th at p. 650; *People v. Mendez*, *supra*, 19 Cal.4th at p. 1094; *People v. Lyons*, *supra*, 178 Cal.App.4th at pp. 1360-1363; *People v. Ramirez*, *supra*, 159 Cal.App.4th at pp. 1420-1421; *People v. Dagostino* (2004) 117 Cal.App.4th 974, 997.)

We conclude we lack jurisdiction over the appeal of the no contact condition because it was not filed within 60 days of its imposition.

## DISPOSITION

The waivers of the privilege against self-incrimination set forth in section 1203.067, subdivision (b)(3), and in the polygraph consent form are stricken as conditions of defendant's probation. In all other respects, the judgment is affirmed.

---

[11]   We find defendant's argument that the no contact condition imposed in 2013 is intertwined with the probation modifications imposed in 2014 without merit. The two conditions are independent and separate from one another.

Defendant's challenge to the no contact condition of probation is denied as untimely.

_____
LEVY, Acting P.J.

WE CONCUR:


_____
DETJEN, J.


_____
FRANSON, J.